OPINION
Appellant David Price appeals the judgment of the Butler County Common Pleas Court, Juvenile Division, finding him delinquent for committing an act that constituted the crime of gross sexual imposition. We affirm in part and reverse in part the trial court's adjudication and disposition for the reasons outlined below.
Appellant was eleven years old when he was charged with the delinquent act of rape of a seven-year-old female neighbor ("T.G."). The charge was the result of events that took place at a cookout at appellant's house on March 24, 2000.
Appellant, T.G., and appellant's younger brother had been playing at appellant's house while the cookout was held in the backyard. T.G.'s mother testified that she walked into appellant's house and heard her daughter "hollering," "get off me, get off me, you're hurting me."
T.G.'s mother followed her daughter's voice to a closet area where she observed appellant on top of T.G. "moving back and forth." T.G.'s mother stated that she pulled appellant off of T.G., who was crying. Appellant's pants and underwear were down around his ankles. T.G.'s pants and underpants were also down around her ankles.
Appellant was charged in juvenile court with delinquency by reason of rape. Appellant was adjudicated delinquent for an act that would constitute gross sexual imposition in violation of R.C. 2907.05. Appellant was given a suspended six-month commitment to the Department of Youth Services ("DYS"), conditioned upon his successful completion of treatment at the Butler County Rehabilitation Center while on probation.
Several months later, appellant admitted to a violation of probation based upon his failure to complete the rehabilitation program. Appellant was committed to DYS for a minimum period of six months and a maximum period not to exceed his twenty-first birthday. Appellant appeals his adjudication and disposition and raises four assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO CREATE A COMPLETE RECORD IN VIOLATION OF JUV.R. 37(A).
Appellant argues that because the videotape of T.G.'s testimony was inaudible, the trial court failed to make a complete record of appellant's adjudication in violation of Juv.R. 37(A).[1] T.G. testified in a separate room, outside of the physical presence of appellant. The videotape of this testimony submitted as part of the record contains the video portions of T.G.'s entire testimony, but the audio is so poor that the testimony is inaudible.
We note that appellant supplemented the record by requesting the inclusion of the videotape in the record, but apparently did not further supplement the record with an App.R. 9 statement of T.G.'s testimony.[2]
We have previously stated that App.R. 9(E) provides an appellant the opportunity to modify or correct the record to preserve his arguments for review. State v. Chapple (May 17, 1993), Warren App. No. CA92-11-100, unreported. An appellant has a duty to exemplify any alleged errors by reference to matters in the record, and that duty is discharged by the filing of a verbatim transcript, a narrative statement of the evidence as provided in App.R. 9(C), or an agreed statement of the record filed pursuant to App.R. 9(D). Djurich v. LaHood (1990), 66 Ohio App.3d 332 . Absent any exemplified error, a reviewing court has no choice but to presume regularity in the proceedings of the trial court and affirm. Id.
Appellant cited several cases wherein reversal was ordered when the record was silent concerning a juvenile defendant's waiver of his or her constitutional right to trial or counsel. Appellant also cites In reAllen (Oct. 19, 2000), Cuyahoga App. No. 77421, unreported, which reversed a delinquency finding because the testimony on two charges was missing from the record.
The instant case involves the juvenile court's attempt at a verbatim transcript, but with less than perfect results. However, the record in this case is not silent. Both the state and appellant presented evidence that is available for this court's review.
We further note that appellant has failed to inform the court with specificity what evidence or prejudicial errors are contained in the testimony that was inaudible. Appellant has also failed to supplement the record with a statement or summary of the evidence in question. We decline to reverse the trial court based upon the inaudible videotape testimony of T.G. Appellant's first assignment of error is overruled.
We will next address the third and fourth assignments of error.
Assignment of Error No. 3:
 THE TRIAL COURT VIOLATED DAVID PRICE'S RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION, AND JUV.R. 29(E)(4) WHEN IT ADJUDICATED HIM DELINQUENT OF GROSS SEXUAL IMPOSITION ABSENT PROOF OF EVERY ELEMENT OF THE CHARGE AGAINST HIM BY SUFFICIENT, COMPETENT, AND CREDIBLE EVIDENCE.
The standard of review for the sufficiency of the evidence in a juvenile adjudication is the same standard used in an adult criminal case. See In re Washington (1998), 81 Ohio St.3d 337, 339. When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court's function is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
As we previously discussed in the first assignment of error, a transcript of T.G.'s testimony is not available for our review. An appellant's failure to complete the record is generally fatal in cases where the assignment of error concerns the sufficiency or manifest weight of the evidence, and a complete transcript is, thus, necessary for meaningful review. See Smart v. Nystrom (1997), 119 Ohio App.3d 738,741.
However, there is an adequate amount of evidence in the record for this court to conduct a meaningful review of the offense of gross sexual imposition, even absent the App.R. 9 statement.
The juvenile court found that appellant committed the crime of gross sexual imposition pursuant to R.C. 2907.05. That statute states, in part, that no person shall have sexual contact with another, not the spouse of the offender, when any of the following applies:
 1. Offender compels the other person to submit by force or threat of force.
 2. To prevent resistance, the offender impairs the judgment or controls the other person by an intoxicant or controlled substance.
 3. The offender knows the judgment of the other person is substantially impaired by an intoxicant or drug.
 4. The other person is less than thirteen years of age, whether the offender knows the age of the other person.
 5. The ability to resist of the other person is affected by his or her mental or physical condition or advanced age.
The trial court did not list the applicable subsection of R.C. 2907.05
in its findings of delinquency or in its judgment entries. Therefore, it is not clear whether the finding was made under subsection (A)(1), involving the use of force or the threat of force, or, under subsection (A)(4), which involves a victim under the age of thirteen.
Appellant points out that the offense for which he was adjudicated was listed as a felony of the fourth degree if committed by an adult. A violation of R.C. 2907.05(A)(4) is a felony of the third degree. See R.C. 2907.05(B). Therefore, we will presume for our analysis below that the juvenile court made its determination of delinquency under R.C.2907.05(A)(1) which is a fourth degree felony. Id.
Appellant first argues that the state failed to sufficiently show that element of R.C. 2907.05(A)(1), requiring proof that the offender purposely compelled the victim to submit by force or threat of force.
Force is defined as any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing. R.C. 2901.01(A)(1). The Fifth District Appellate Court in State v. Harrel (Jan. 3, 2000), Delaware County App. No. 99CAA03013, unreported, found that an offender laying with his full weight on the victim so that the victim did not feel that she could get up, met the definition of constraint physically exerted upon a person. See, also, State v. Birkman (1993),86 Ohio App.3d 784, 788 (appellant's act of placing his arms such that victim could not move away from him constituted force within R.C.2907.05[A][1] and R.C. 2901.01[A]).
T.G.'s mother testified that she heard her daughter saying "get off me, get off me, you're hurting me." T.G.'s mother testified that she walked to a closet where she observed appellant moving back and forth on top of T.G., who was crying. T.G.'s mother indicated that she grabbed appellant by the shirt and pulled him off of her daughter. Based upon this testimony about the events the mother observed in the closet area, we find that the state presented sufficient evidence that appellant compelled his victim by force or threat of force.
Appellant further argues that the state failed to show the required element of sexual contact between appellant and T.G. Sexual contact is defined by R.C. 2907.01(B) as any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.
Whether the touching of another's erogenous zone was performed for sexual arousal or gratification is a question of fact to be inferred from the type, nature, and circumstances surrounding the contact. In reAnderson (1996), 116 Ohio App.3d 441. We have previously outlined the testimony of T.G.'s mother regarding the circumstances that she observed in the closet between appellant and her daughter, including the position of appellant laying on top of T.G., appellant's movement while on top of T.G., and their state of undress. This testimony is sufficient for the juvenile court to make a determination that appellant had sexual contact with T.G.
Accordingly, we find there was sufficient, competent, and credible evidence in the record for the trial court to find all the essential elements of the crime of gross sexual imposition proven beyond a reasonable doubt. Appellant's third assignment of error is overruled.
Assignment of Error No. 4:
 THE TRIAL COURT VIOLATED DAVID PRICE'S RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION WHEN IT ADJUDICATED HIM DELINQUENT OF GROSS SEXUAL IMPOSITION, WHEN THAT FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In determining whether a criminal conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
Appellant argues that his adjudication was against the manifest weight of the evidence by challenging the credibility of the state's witnesses and attempting to raise reasonable doubt about the criminality of appellant's conduct. Again, we will determine whether the adjudication was against the manifest weight of the evidence based only on the evidence in the record.
We have previously described the testimony of T.G.'s mother concerning the conduct she witnessed in the closet area involving appellant and T.G. The state also presented testimony from a juvenile ("A.B") who was housed in the juvenile detention center at the same time as appellant. A.B. testified that appellant told him about an unidentified female and how he had "busted her cherry," was proud of it, and "had made her bleed." Appellant allegedly told A.B. that this was the reason appellant was in juvenile detention.
Appellant presented a witness who testified that he observed T.G.'s mother drinking beer and smoking marijuana at the cookout before the mother witnessed the events in the closet area. Appellant attacked the mother's testimony concerning her observation of sexual contact by having T.G.'s mother admit that she had not noticed whether appellant's penis was erect when she pulled appellant away from her daughter. Appellant also presented testimony that T.G.'s mother was upset with her daughter and spanked her immediately after discovering her daughter with appellant in the closet area. This apparent inference that T.G.'s mother was concerned about her daughter's voluntary participation in the act is contrasted with the mother's testimony that she was drawn to the closet area by her daughter's cries that appellant get off of her and that appellant was hurting her.
Appellant also challenged A.B.'s credibility by emphasizing that A.B. was himself involved in juvenile delinquency matters. Appellant was also able to elicit testimony from A.B. that A.B. believed that the female subject about whom appellant had been boasting was not a neighbor, but appellant's female cousin or relative.
When this court engages in a manifest weight analysis, we must keep in mind that the trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. Statev. Gibbs (1999), 134 Ohio App.3d 247, 256.
Reviewing the record as presented by the state and appellant, and weighing the evidence and reasonable inferences, we cannot find that the judge clearly lost his way and created such a manifest miscarriage of justice that the finding of delinquency by reason of gross sexual imposition must be reversed. Considering only that evidence which was presented in the record on appeal, appellant's constitutional rights under the U.S. and Ohio Constitutions were not violated by the finding of delinquency for gross sexual imposition. Appellant's fourth assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED WHEN IT FAILED TO CREDIT THE DAYS DAVID PRICE WAS HELD IN THE BUTLER COUNTY DETENTION CENTER AND THE BUTLER COUNTY REHABILITATION CENTER TOWARD THE BALANCE OF HIS COMMITMENT.
Former R.C. 2151.355(F)(6)[3] required a juvenile court to include in its commitment entry the total number of days that the child had been held in detention in connection with the delinquent child complaint upon which the order of commitment was based.
R.C. 2151.355(F)(6) also stated that DYS shall reduce the minimum period of institutionalization by both the total number of days that the child was so held in detention as stated by the juvenile court in its commitment entry and the total number of any additional days the child was held in detention subsequent to the order of commitment but prior to the transfer of physical custody of the child to DYS.
Detention was defined in R.C. 2151.011(B)(12)[4] as the temporary care of children pending court adjudication or disposition, or execution of a court order, in a public or private facility designed to physically restrict the movement and activities of children.
Appellant argues that this court should rely on the statutory definitions of detention contained in certain criminal statutes as guidance for this case. Specifically, appellant asks this court to consider the definition of detention contained in R.C. Chapter 2921, which deals with offenses against justice and public administration. R.C. 2921.01(E) states, in part, that detention is confinement in a facility for custody of persons charged with or convicted of a crime or alleged or found to be a delinquent child.[5] The definition of detention in R.C. Chapter 2921 assists in the determination of whether the offense of escape is applicable to certain conduct.
Appellant also argues that we should apply the law pertaining to adult community-based correctional facilities ("CBCF") to this case. R.C.2967.191 states, in part, that the department of rehabilitation and corrections shall reduce the state prison term of a prisoner by the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced. The Ohio Supreme Court in State v. Napier (2001), 93 Ohio St.3d 646, recently stated that all time served in community-based correctional facilities constituted confinement for purposes of R.C. 2967.191.[6]
R.C. 2949.08 now contains language about CBCF placements for felony convictions, and also adds that the record of conviction for persons convicted of a misdemeanor who are sentenced to a term of imprisonment in a jail shall state the total number of days the person was confined for any reason arising out of offense for which the person was convicted for the purpose of receiving a reduction in sentence for the days so confined.[7]
We decline to insert the definition provided by R.C. Chapter 2921 into the juvenile law statutes of R.C. Chapter 2151. We also reject appellant's argument that we should apply the law pertaining to adult CBCFs to this case. The process by which credit for time served is granted has very specific statutory authority both in criminal and juvenile law. It is not our role to legislate.
The Ohio legislature dictated in former R.C. 2151.355 and R.C. 2151.011
that a juvenile's term at DYS be reduced by the time the juvenile is held in detention and defined detention as the temporary care of children pending adjudication or disposition, or execution of court order. R.C.2151.011(A)(12). We decline the invitation to substitute criminal statutes to re-evaluate the mandate previously provided by the legislature to grant credit for time served by juveniles.
Appellant also argues that the language of R.C. 2151.011(B)(12) includes appellant's placement at the Butler County Rehabilitation Center. Reviewing the juvenile statutes applicable in this case, we find that appellant's placement at the Butler County Rehabilitation Center while on probation did not constitute detention for which credit is to be granted pursuant to R.C. 2151.011 and former R.C. 2151.355.
The rehabilitation center placement was not the temporary care of appellant pending court adjudication or disposition, or execution of a court order. Appellant was placed on probation, which terms included the successful completion of the rehabilitation program at Butler County.
Appellant's time in the rehabilitation center did not meet the statutory definition of detention under juvenile law, and therefore, there is no statutory basis for crediting that time to appellant's DYS term. See In re C.H. (Feb. 2, 2002), Cuyahoga App. No. 79329, unreported.
The juvenile court did not err in failing to grant appellant credit for time served in the Butler County Rehabilitation Center. However, appellant was entitled to credit for time served in the Butler County detention center prior to adjudication or disposition, or execution of a court order. R.C. 2151.355(F)(6); see, also, State v. Hughley (Feb. 13, 1998), Hamilton App. No. C-970176, unreported.
Our review of the record indicates that appellant was held in the Butler County detention center more than the thirty-five days that was apparently credited by the juvenile court. While the record is not clear, appellant concedes that he was released on electronic monitoring prior to adjudication. However, appellant was held in detention prior to that release on electronic monitoring, which was temporary care pending adjudication.
Appellant was also held additional days after adjudication pending disposition or execution of the court's order to the rehabilitation center and, finally, pending transfer to DYS. According to former R.C.2151.355 and R.C. 2151.011, appellant should receive credit for this time served in the detention center.
We overrule, in part, appellant's second assignment of error as it pertains to time served at the Butler County Rehabilitation Center. We sustain, in part, appellant's second assignment of error as it pertains to credit for time served in the juvenile detention center, and reverse the judgment of the juvenile court on the issue of the credit for time served in the juvenile detention center. We remand this case to the juvenile court so that it may calculate the days appellant served in the detention center pending adjudication or disposition, or execution of a court order and include such days in the juvenile court's commitment entry.
Judgment is affirmed in part and reversed in part and remanded.
YOUNG, P.J., and POWELL, J., concur.
[1] Juv.R. 37(A) states, in part, that: The juvenile court shall make a record of adjudicatory and dispositional proceedings in * * * unruly, and delinquent cases; * * * The record shall be taken in shorthand, stenotype, or by any other adequate mechanical, electronic, or video recording device.
[2] App.R. 9(C) Statement of the evidence or proceedings when no report was made or when the transcript is unavailable.
If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement shall be served on the appellee no later than twenty days prior to the time for transmission of the record pursuant to App.R. 10, who may serve objections or propose amendments to the statement within ten days after service. The statement and any objections or proposed amendments shall be forthwith submitted to the trial court for settlement and approval. The trial court shall act prior to the time for transmission of the record pursuant to App.R. 10, and, as settled and approved, the statement shall be included by the clerk of the trial court in the record on appeal.
App.R. 9(D) Agreed statement as the record on appeal.
In lieu of the record on appeal as defined in division (A) of this rule, the parties, no later than ten days prior to the time for transmission of the record pursuant to App.R. 10, may prepare and sign a statement of the case showing how the issues presented by the appeal arose and were decided in the trial court and setting forth only so many of the facts averred and proved or sought to be proved as are essential to a decision of the issues presented. If the statement conforms to the truth, it, together with additions as the trial court may consider necessary to present fully the issues raised by the appeal, shall be approved by the trial court prior to the time for transmission of the record pursuant to App.R. 10 and shall then be certified to the court of appeals as the record on appeal and transmitted to the court of appeals by the clerk of the trial court within the time provided by App.R. 10.
App.R. 9(E) Correction or modification of the record
If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the court of appeals, or the court of appeals, on proper suggestion or of its own initiative, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the court of appeals.
[3] This code section is cited in this opinion as it appeared when the offense for which appellant was charged occurred. R.C. 2151.355 was repealed by the Juvenile Justice Reform Act. Language similar to R.C.2151.355(F)(6) is now codified in R.C. 2152.18(B).
[4] The definition of detention in former R.C. 2151.011(B)(12) is the same as that term is now defined in the current version of R.C.2151.011(B)(13).
[5] R.C. 2921.01(F) states, in part, that a detention facility means any place used for the confinement of a person alleged or found to be a delinquent child.
[6] The 1974 Committee Comments to R.C. 2967.191 states that this section deals with both the minimum and maximum terms of imprisonment imposed for felonies.
[7] An appellate court in State v. James (1995), 106 Ohio App.3d 686,690, granted James credit in the adult system for the time James served in juvenile detention pending his transfer to adult court for trial. TheJames court ruled that because the juvenile was unable to leave juvenile detention of his own volition prior to his transfer to the adult system for trial, he was confined within the meaning of R.C. 2949.08.